UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| VS. | ) SA-15-CR-440-XR |
| | ) |
| JUAN FRANCISCO GUAJARDO VALDEZ | ) |

**ORDER**

On this day came on to be considered Defendant's motion to dismiss (docket no. 21), Defendant's motion to suppress (docket no. 25), and numerous responses (docket nos. 23, 26, 31, 32, 33, 34, and 39).

**Background**

On July 23, 1993, Guajardo-Valdez was removed from the United States. On January 30, 2007, a Complaint was filed in the Western District of Texas, Del Rio Division that alleged that Guajardo-Valdez had entered the United States unlawfully after having been formally removed. DR-07-mj-1349. The Complaint further alleged that the Defendant was believed to be living in either San Antonio or El Paso, Texas. A warrant was then issued for the Defendant's arrest. No evidence has been provided to this Court as to what action, if any, was taken to locate and apprehend Guajardo-Valdez in 2007.

On October 15, 2014, a San Antonio Police Officer encountered the Defendant during a stop for a routine traffic violation. When the police officer ran a check for outstanding warrants, the police officer became aware of the 2007 warrant and arrested the Defendant. Guajardo-

Valdez was then transferred to the custody of the United States Marshal. He was then transferred to Del Rio, Texas.

On October 29, 2014, the Government filed a motion to dismiss the 2007 Complaint stating: "Prior to being encountered by ICE in Del Rio [apparently between October 16-28, 2014], the Government has no evidence that Defendant was found in the Western District of Texas by immigration officials following his prior deport on July 23, 1993. Due to this lack of evidence, the Government requests dismissal of Defendant's 2007 complaint." DR-07-mj-1349, docket no. 10. The Court dismissed the complaint without prejudice. DR-07-mj-1349, docket no. 11.

The Defendant remained in physical custody after the dismissal, and on November 14, 2014, he was interviewed by an Immigration and Customs Enforcement (ICE) agent at the Val Verde Detention Center. The Defendant informed ICE Agent Humberto Cardenas that he waded across the Rio Grande River on June 20, 2013[1]. On November 17, 2014, a new criminal complaint was filed in the Western District of Texas, Del Rio Division alleging that the Defendant was arrested and "found" on November 14, 2014. Thereafter, an indictment was filed on December 10, 2014 charging the Defendant with illegal re-entry in violation of 8 U.S.C. § 1326. DR-2014-cr-1744, docket no. 9.

On June 9, 2015, Defendant's counsel filed a motion to dismiss the indictment for lack of venue citing *U.S. v. Hernandez-Hernandez*, 291 F. Supp. 2d 490 (W.D. Tex. 2003).[2] The Government correctly argued that venue was proper in Del Rio because Del Rio was located in

---

[1] Some documents reference a date of June 20, 2012. All parties now appear to agree that the 2013 date is the correct date.
[2] This case dealt with which *district* (the Southern District of Texas or Western District of Texas) was the proper venue. Venue for illegal reentry is proper in any district in which "the violation may occur." 8 U.S.C. § 1329.

the Western District of Texas, and that the Del Rio Division was where the Defendant was found. Alternatively, the Government argued that dismissal was not the proper remedy for any improper venue, but rather the case should be transferred to the appropriate division within the district (San Antonio). 2014-cr-1744, docket no. 47. The Court granted the Defendant's motion and dismissed the indictment. 2014-cr-1744, docket no. 51.

On June 9, 2015, the Government filed another criminal complaint, this time in the San Antonio Division, arguing that the Defendant had been "found" in San Antonio on or about October 15, 2014 (the date of the SAPD traffic stop). SA-2015-mj-492. An indictment was later filed on June 17, 2015, charging the Defendant with illegal re-entry in violation of 8 U.S.C. § 1326. SA-2015-CR-440, docket no. 10.

**Pending Motions**

On July 29, 2015, Defendant filed a motion to dismiss this indictment arguing that the Defendant was "found" in the Western District of Texas on January 30, 2007, and any prosecution is barred by the five-year limitations period governed by 18 U.S.C. § 3282(a). Defendant further argues that any subsequent dates that he was encountered are moot because once a person is initially found, he cannot be "re-found." [3] Defendant also argues that he cannot be tried for being found on October 15, 2014 because he was arrested by a police officer, not encountered by an ICE agent, who must be aware of the alien's presence and that the presence is

---

[3] Relying upon *U.S. v. Hernandez*, 189 F. 3d 785 (9th Cir. 1999) and *U.S. v. Franco*, 2011 WL 2746648 (N.D. Ill. July 13, 2011)(ICE found defendant in a state jail in 2003. After release from the state jail, an ICE agent located the defendant in December 2010. The district court found the information filed in 2011 was barred by the five-year limitations period because there was no evidence that the defendant attempted to conceal himself from 2003 to 2010).

unlawful.[4]  Finally, Defendant argues he could not have been found on November 14, 2014, because he was in custody and he was not voluntarily present in the United States on that date.

Alternatively, Defendant argues that his indictment should be dismissed because he has been in continuous confinement since October 16, 2014 and his due process rights have been violated and the Government was "overinvolved" in the charged crime. Alternatively, Defendant argues that his right to a speedy trial has been violated. Docket no. 21.

On August 26, 2015, the Defendant filed a motion to suppress. Docket no. 25. In this motion the Defendant seeks to suppress any statements he made to the ICE agent on November 14, 2014. He argues that he was illegally detained during this interview (and for a total of 41 days)(October 30, 2014 through November 17, 2014). He further argues that his statements were not made voluntarily.

**Analysis**

**Found In & Limitations**

8 U.S.C. § 1326 provides in relevant part, as follows:

any alien who--
(1) has been denied admission, excluded, deported, or removed …, and thereafter

---

[4] Relying upon *U.S. v. Santana-Castellano*, 74 F. 3d 593, 598 (5th Cir. 1996)("we hold that a previously deported alien is 'found in' the United States when his physical presence is discovered and noted by the immigration authorities, and the knowledge of the illegality of his presence, through the exercise of diligence typical of law enforcement authorities, can reasonably be attributed to the immigration authorities") and *U.S. v. Compian-Torres*, 712 F. 3d 203, 207 (5th Cir. 2013)(same) and *U.S. v. Corro-Balbuena*, 187 F. 3d 483, 485 (5th Cir. 1999)(Section 1326 sets forth a continuing offense. That offense begins at the time the defendant illegally re-enters the country and does not become complete unless or until the defendant is found by the INS in the United States.).

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States …, the Attorney General has expressly consented to such alien's reapplying for admission;…

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

The Government concedes that the 2007 Complaint was appropriately dismissed because of limitations and it responds that it is not prosecuting the Defendant on any theory that he was found in 2007. The Government argues that pursuant to Defendant's own statement he departed the United States after 2007 and re-entered on June 20, 2013. The Government further argues that he was "found" in the Western District of Texas in 2014, within the five-year limitations period for prosecution.

The Ninth Circuit, while discussing a venue challenge in a Section 1326 case, defined the phrase "found in" under this statute. *See U.S. v. Hernandez*, 189 F.3d 785 (9th Cir. 1999). The Ninth Circuit stated:

> [t]he plain meaning of § 1326 can easily be understood by a person of "ordinary intelligence." It prohibits a deported alien from re-entering the United States without permission. … In a further refinement, we stated that the crime of being "found in" the United States continues until the INS discovers the defendant. *United States v. Guzman-Bruno*, 27 F.3d 420, 423 (9th Cir. 1994).
>
> Other federal courts agree that a deported alien is "found in" the United States when the alien is discovered by the authorities. *See United States v. Santana-Castellano*, 74 F.3d 593, 598 (5th Cir. 1996) ("[A] 'found in' violation is a continuing violation until the date the alien is discovered by immigration authorities...."); *United States v. Rivera-Ventura*, 72 F.3d 277, 282 (2d Cir.1995) ("[T]he offense of being 'found in' the United States in violation of § 1326(a) is not complete until the authorities both discover the illegal alien in the United States, and know, or with the exercise of diligence typical of law enforcement authorities could have discovered, the illegality of his presence.") (internal citations omitted); *United States v. Gomez*, 38 F.3d 1031, 1035 (8th Cir. 1994) ("[A] 'found in' violation is a continuing violation that is not complete until the alien is 'discovered' by immigration authorities."). The Eighth Circuit recently reiterated its holding in *Gomez* that "the crime of reentry under § 1326 is an on-going offense that continues until an individual is discovered by authorities.... When an individual is 'found in' the United States, the date he or she is found is

generally considered to be the date he or she violated § 1326." *United States v. Estrada-Quijas*, 183 F.3d. 758, 761-62 (8th Cir. 1999) (internal citations omitted). *Hernandez*, 189 F.3d at 789-90.

In this case the Government alleges that the Defendant re-entered the United States in June 2013. Thereafter, he was "found" by immigration agents either on October 29, 2014 or November 14, 2014. In either event, this Court concludes he was found within the five-year limitations period. Defendant's "re-found" argument is not applicable in this case. If he was initially found in 2007, he thereafter left the country and re-entered in 2013. *See U.S. v. Gomez-Herrera*, 2013 WL 3776191 (W.D. Tex. 2013) (denying a motion to dismiss an indictment because limitations not applicable).

**2014 Presence in detention facilities and "not voluntary"**

Without citation to any authority, Defendant argues that since his presence in 2014 was inside a detention facility, he was not voluntarily present in the United States. This argument is misplaced. Section 1326 only requires that the Defendant's reentry into the United States was a voluntary act. *See U.S. v. Guzman-Ocampo*, 236 F.3d 233 (5th Cir. 2000). Defendant's argument is also foreclosed by *U.S. v. Flores-Alejo*, 531 F. App'x. 422 (5th Cir. 2013).

**Speedy Trial Act claim**

"The Speedy Trial Act ("STA") requires a trial within 70 days after the indictment, 18 U.S.C. §§ 3161(c)(1), 3162(a)(2), but it excludes various delays arising from pretrial proceedings." *United States v. Conlan*, 786 F.3d 380, 393 (5th Cir. 2015). The relevant exclusion here applies to delays resulting from pretrial motions. 18 U.S.C. § 3161(h)(7)(A). In this present case, an indictment was filed on June 17, 2015. In this case there has been no

violation of the Speedy Trial Act. *See U.S. v. Mize*, 820 F.2d 118, 121 (5th Cir. 1987) ("Although subsection (d)(1) speaks in terms of a dismissal 'upon motion of the defendant', courts have interpreted this subsection as starting a new seventy-day period whenever the indictment is dismissed, other than by the government's motion, and a new indictment is later filed.  Although the Act is somewhat awkwardly structured, its clear intent is to limit its protection to defendants who face pending and live indictments or charges.").

**Sixth Amendment speedy trial claim and due process claim**

As indicated above, Defendant argues that his due process rights have been violated, the Government was "overinvolved" in the charged crime, and he has been denied a speedy trial. To the extent that Defendant is arguing that his constitutional right to a speedy trial has been violated (as opposed to the statutory right to a speedy trial), a court must balance four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy-trial rights; and (4) the prejudice to the defendant resulting from the delay. *United States v. Estrada*, No. 14-50534, 2015 WL 4237678, at *1 (5th Cir. July 14, 2015).

With regard to the claim of "overreaching," the Court assumes the Defendant is asserting that the actions by the government in this case are so outrageous or fundamentally unfair as to deprive the defendant of due process of law. *See U.S. v. Yater*, 756 F. 2d 1058, 1066 (5th Cir. 1985) (restating that a due process violation will be found only in the rarest and most outrageous circumstances; Government's conduct did not violate due process where it consisted of use of paid informants who agreed to stake defendant in a poker game, frequently contacted the defendant to arrange a drug deal and promised to take care of the defendant's 18-month-old child when defendant, who was dying of cancer, passed away).

As stated above, the Defendant was not taken into federal custody until October 16, 2014. The U.S. Attorney's Office moved for dismissal of the indictment for lack of evidence on October 29, 2014. The Court granted the motion the next day. Although the Defendant was detained for these 13 days before the prosecution of his case was dismissed, he was illegally present in the United States and subject to detention by the immigration officials.

After this indictment was dismissed, the Defendant remained detained. The Defendant argues that he was wrongfully being held so that the Government could criminally prosecute him. He argues that after the October 30, 2014 dismissal, he should have been administratively processed for removal from the United States. In support of that argument, he relies upon email exchanges between a Border Patrol agent and deputy clerks in the Western District of Texas, Del Rio Division and individuals in the U.S. Attorney's office. See Document No. 27, Exhibit K.

On November 13, 2014, a Border Patrol agent inquired about the status of the Defendant and noted that he has been "sitting" in the Kinney County jail. See Document No. 27, Exhibit K. The Defendant was then "arrested" in the Kinney County jail on November 14, 2014. On November 17, 2014, a new criminal complaint was filed against him in Del Rio. DR-2014-CR-1744. His attorneys thereafter filed motions to continue his preliminary and detention hearings and filed a motion for bond. Accordingly, even if the Speedy Trial Act applied during this period, these motions filed by the defendant's counsel tolled the act from November 18 to November 24, 2014.

The docket sheet in DR-2014-CR-1744 reflects that the Defendant made a motion to continue his bond setting, moved to continue his preliminary and detention hearing, filed sealed motions to dismiss the indictment (docket nos. 13-15), and filed a motion to dismiss for improper

venue (docket no. 47). On June 9, 2015, the Court sitting in Del Rio granted the Defendant's motion for dismissal based upon Defendant's argument that the case should have been filed in San Antonio. Accordingly, even if the Speedy Trial Act applied during this period, these motions filed by the defendant's counsel tolled the act and only four non-excludable days had elapsed. The Government responded to that dismissal by immediately filing a new criminal complaint in San Antonio that same day.

Balancing the four factors restated in *Estrada*, the lengths of delay have been minimal. Much of the delay in this case is attributable to motions filed by the Defendant arguing over which division in the Western District of Texas he should be tried in. Although the Defendant has repeatedly asserted he is entitled to a speedy trial, his actions have all been consistent with delaying a trial. Finally, the Defendant has not shown any prejudice resulting from any delays. Because of the Defendant's previous drug conviction it is uncontested that Defendant's detention has not exceeded the sentencing guidelines should he be found guilty of this current offense.[5]

Otherwise, with regard to the "overreaching" or "outrageous" claim, all that can be said is that the U.S. Marshal's Service and immigration officials were slow in processing the necessary paperwork, and that a good faith disagreement arose between the Court in Del Rio and the U.S. Attorney's office as to where venue was proper. Given the Government conduct in *Yater* that was found insufficient to rise to the level of outrageous conduct, the actions taken by both immigration officials and the U.S. Attorney's office in this case is far from the mark.

---

[5] Defendant was arrested for possession of cocaine and marijuana in 1990 and was sentenced to sixty months imprisonment.

**Motion to Suppress**

In this motion the Defendant seeks to suppress any statements he made to the ICE agent on November 14, 2014.  He argues that he was illegally detained during this interview.  As stated above, this argument lacks merit inasmuch as immigration authorities had the authority to detain the Defendant.

The Defendant further argues that his statements were not made voluntarily.  "A confession is voluntary if, under the totality of the circumstances, the statement is the product of the accused's free and rational choice.  Where a defendant challenges the voluntariness of the confession, the burden is on the government to prove, by a preponderance of the evidence, that the statement made was voluntarily." *United States v. Montalvo-Rangel*, 437 F. App'x 316, 319 (5th Cir. 2011)(internal citation omitted).  In this case, as the evidentiary hearing held on September 11, 2015 demonstrated, the Defendant's statements were made voluntarily.  The Defendant was not handcuffed during the interview.  The two ICE agents did not have any weapons present.  Both agents were physically smaller than the Defendant.  They spoke to the Defendant in Spanish and administered *Miranda* warnings.[6]  They also provided him warnings of his rights in an administrative proceeding.[7]  The Defendant was calm and relaxed during the interview, waived his right to an attorney, and provided answers in response to the Form I-213 questions posed to him.[8]

---

[6] September 11, 2015 hearing, Gov't Ex. 1.
[7] September 11, 2015 hearing, Gov't Ex. 2.
[8] September 11, 2015 hearing, Gov't Ex. 3.

### *Brown v. Illinois* claim and global due process claim

Although the Defendant in this case has couched his arguments in a number of ways, the bottom line is that he contends that after the October 30, 2014 dismissal of his indictment in Del Rio, there were no grounds to continue to detain him under U.S. Marshal custody. Defendant argues that the Government was continuing to detain him until it discovered new information to establish all elements of the section 1326 offense. Defendant argues his case is similar to *Brown v. Illinois*, 422 U.S. 590 (1975). In that case Richard Brown was arrested without probable cause and without a warrant, and under circumstances indicating that the arrest was investigatory. Brown made two in-custody inculpatory statements after he had been given *Miranda* warnings. The Supreme Court concluded that despite the *Miranda* warnings, the in-custody statements should have been suppressed noting: "The detectives embarked upon this expedition for evidence in the hope that something might turn up. The manner in which Brown's arrest was effected gives the appearance of having been calculated to cause surprise, fright, and confusion." *Id*. at 605.

This case, however, is not similar to *Brown v. Illinois*. There was no expedition or outrageous collusion to arrest Guajardo Valdez for the purpose of hoping that "something might turn up." The Defendant was illegally present in the United States and immigration authorities had a duty to investigate his presence.[9] The Marshal received a detainer request on October 28, 2014 regarding the Defendant. An immigration detainer had been placed,[10] but for some unexplained reason the paperwork to transfer the Defendant from Marshal legal custody to ICE

---

[9] This Court's rejection of the Federal Public Defender's argument is confined to the facts of this section 1326 case.
[10] Docket 27, Exhibit N.

legal custody was not completed until November 13 or 14, 2014.[11] In Del Rio, Texas, the Defendant would not be physically transferred to a different detention facility because the Marshal and ICE have contracts with the same detention facilities. The evidence in this case demonstrates that the legal custody of the Defendant was not transferred because the Marshal's Service failed to send a "release" to ICE, which informs ICE to "pick up" the prisoner.[12] Until such time as the Defendant was interviewed by immigration officials, administrative deportation proceedings may or may not have been a possibility in this case. Immigration agents testified during a February 15, 2015 hearing in Del Rio that at no time did they request the U.S. Marshal's Service to keep the Defendant in custody for the purposes of advancing a criminal prosecution against the Defendant.[13] The Defendant's *Brown v. Illinois* and global due process claims are denied.

## Conclusion

Defendant's motion to dismiss (docket no. 21) is denied and Defendant's motion to suppress (docket no. 25) is denied.

SIGNED this 22nd day of September, 2015.

               XAVIER RODRIGUEZ
               UNITED STATES DISTRICT JUDGE

---

[11] Docket 27, Exhibit N.
[12] *Id*.
[13] *Id*. at p. 36.